IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

LAURA C.,

     Plaintiff,

v.                                                                    CIVIL ACTION NO. 5:23-cv-00124

MARTIN J. O'MALLEY
Commissioner of Social Security,[1]

     Defendant.

## PROPOSED FINDINGS & RECOMMENDATION

Plaintiff Laura C. ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, and disabled widow's benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By standing order, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF No. 4). Presently pending before this Court are Claimant's *Brief – Social Security* (ECF No. 12), and the Commissioner's *Brief in Support of Defendant's Decision* (ECF No. 13).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY**

---

[1] Commissioner O'Malley was substituted in place of Acting Commissioner Kilolo Kijakazi following O'Malley's appointment on December 20, 2023.

Claimant's request to reverse the Commissioner's decision (ECF No. 11), **GRANT** the Commissioner's request to affirm his decision (ECF No. 12), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

## I.    BACKGROUND

### A. Information about Claimant and Procedural History of Claim

At all times relevant to the ALJ's adjudication, Claimant was "closely approaching advanced age" (age 50-54) with a high school education and past relevant work as a hotel/motel housekeeper. Tr. 27-28. Claimant alleges that she became disabled on March 1, 2020, due to degenerative disc disease of the cervical spine and major joint dysfunction with osteoarthritis of the shoulders and knees. (Tr. 17.) She filed her claims for DIB and DWB benefits on February 4 and November 16, 2020, respectively (Tr. 14). Her claims were denied initially and upon reconsideration, and a hearing was held before ALJ Drew Crislip on June 1, 2022, at Claimant's request. *Id*. The ALJ entered an unfavorable decision on July 22, 2022. (Tr. 14-30). The Appeals Council denied Claimant's subsequent request for review on December 20, 2022, and the ALJ's decision became the final decision of the Commissioner on that date. (Tr. 1-8.)

Claimant timely brought the present action on February 15, 2023, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) (ECF No. 2). The Commissioner filed a transcript of the administrative proceedings on April 12, 2023 (ECF No. 7). Claimant subsequently filed her *Brief – Social Security* on July 12, 2023 (ECF No. 12), and the Commissioner filed his *Brief in Support of Defendant's Decision* on August 9, 2023 (ECF No. 13). Finally, Claimant then filed *Reply* brief on August 23, 2023. (ECF No. 14.) As such, this matter is fully briefed and ready for resolution.

### B. *Relevant Medical Evidence*

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes the relevant portions here for the convenience of the United States District Judge.

### 1. *Treatment Records*

Imaging of Claimant's right shoulder from July 2019 was unremarkable (Tr. 691). She did not complain of shoulder pain, but did complain of neck pain, to Mustafa Rahim, M.D., in 2019 and 2020 (see, e.g., Tr. 398,405; see also Tr. 408 (right shoulder examination within normal limit, no pain on range of motion)). Mobic (an NSAID) and Zanalfex (used to treat muscle spasms) were prescribed, and physical therapy was recommended (Tr. 409). Imaging of her cervical spine from March 2019 showed narrowing at C5-6 and C6-7 intervertebral disc spaces, 2mm retrolisthesis of C5 onC6 vertebral body, straightening of normal cervical lordosis, and cervical articular facet joint arthropathy (Tr. 682). A December 2019 cervical spine MRJ showed central disc protrusion at C5-6 resulting in moderate right foraminal narrowing and moderate spinal canal stenosis and disc protrusion at C6-7 resulting in mild-to-moderate spinal canal stenosis (Tr. 696- 97). Dr. Rahim referred Claimant to a neurosurgeon in January 2020 (Tr. 420). On February 12, 2020, John Schmidt III, M.D., examined Claimant for right arm pain (Tr. 393). Claimant's range of motion of the head, neck, and upper extremities was normal; her strength was 5/5 throughout; and sensation was within normal limits (Tr. 395). Dr. Schmidt noted that Claimant had some right-sided foraminal narrowing which might be a catalyst for right arm pain, and he thought it was "reasonable to consider" surgery but that she would need to stop smoking for six weeks; she elected to proceed with conservative treatment (Tr. 395-96).

In October 2020, Dr. Rahim indicated he would treat cervical issues with a muscle relaxer and anti--inflammatory medication (Tr. 570). On February 10, 2021, Claimant followed up with Dr. Rahim and had no complaints of neck or shoulder pain (Tr. 563-64). On February 23, 2021, Claimant presented to the emergency room with cervicalgia (Tr. 486- 88). Imaging of the cervical spine showed discogenic disease most pronounced at C5-6, but there was no indication of treatment (Tr. 489). During a consultative examination in April 2021, Daniel Olsen, D.O., noted decreased sensation in the right upper extremity and decreased range of motion of both shoulders and the cervical spine (Tr. 503-04). However, gait, tandem walk, and heel-toe walk were normal; straight leg raise testing was negative bilaterally; Claimant had no swelling or joint deformity; she was able to lift, carry, and handle light objects; could squat and rise back up with ease; rose from a sitting position without assistance; had no difficulty getting up and down from the examination table; had no evidence of atrophy; and muscle strength, grip strength, fine motor coordination, and handline were all within normal limits (Tr. 503-04). Dr. Olsen's overall impression was degenerative disc of the cervical spine with residual numbness and pain in the bilateral upper extremities, as well as tenderness with motion of the cervical spine and shoulder that he noted "could cause difficulty with certain activities" (Tr. 504).

During a follow up with Dr. Rahim on May 21, 2021, Claimant again had no complaints of neck or shoulder pain (Tr. 560-61). On June 28, 2021, she reported that her knee was giving out (Tr. 554). Dr. Rahim found no evidence of edema but referred her for an MRI; however, the record does not indicate that such study actually was performed (Tr. 556). In August 2021, Claimant reported doing "much better," and her arthritis symptoms were doing "very well" (Tr. 551-52). At a follow up with Dr. Rahim on

November 30, 2021, she reported to Dr. Rahim that she fell down while dancing, which was causing knee pain (Tr. 545). She was able to walk and weight-bear (Tr. 545). Dr. Rahim referred her to orthopedist Matthew Nelson, M.D., and once again ordered an MRI; however, the record does not indicate whether or not Claimant had the MRI. (Tr. 545-46).

On December 29, 2021, Claimant went to Med Express reporting neck pain following a motor vehicle accident the day before (Tr. 600). She had full, but painful, range of motion in her neck and back; and she had normal, full shoulder and upper body mobility (Tr. 601). She was diagnosed with cervicalgia (Tr. 602). In January 2022, she reported continued knee pain to Dr. Rahim, who noted the following: that he ordered the MRI and referred Claimant to Dr. Nelson but "whatever they have done is not helping. (Tr. 541). Dr. Rahim further noted that Dr. Nelson obtained an x-ray image, which was negative and evaluated Claimant's injection, "but she continues to have pain in the knee[.]" (Tr. 541).

He prescribed a knee brace and referred for an MRI (Tr. 544), that, again, does not appear to have been performed. Claimant had no complaints of neck or shoulder pain (Tr.5 41-44; see also Tr. 539 (January 2022 complaints of knee pain, but no neck or shoulder pain); Tr. 529 (February 2022 complaints of right leg pain, but no neck or shoulder pain)). Orthopedic records from Dr. Nelson in February and March 2022 show that Claimant presented for right shoulder and right knee pain (Tr. 642, 644). She had right shoulder tenderness with positive impingement sign (Tr. 642). Dr. Nelson stated Claimant had moderate effusion of the right and left knee with tenderness, crepitus, and limited range of motion, but she had no atrophy (Tr. 642-43, 644). He diagnosed osteoarthritis of the knees and administered injections (Tr. 643).

### *2. Opinion Evidence*

Dr. Amigo, state agency medical examiner, reviewed the file on reconsideration and found that Claimant could lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk six hours and sit six hours in an eight-hour workday; occasionally climb ramps/stairs, ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl; occasionally reach overhead, in front/laterally with the bilateral upper extremities; and avoid concentrated exposure to extreme cold, vibration, and pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation (Tr. 80-83). Dr. Owens, testifying medical expert, opined that Claimant can lift/carry twenty pounds occasionally and ten pounds frequently; sit six hours, stand four, and walk two, in an eight-hour workday; occasionally bend, stoop, and crouch; less than occasionally kneel, crawl, or climb ladders/ropes/scaffolds; frequently operate foot controls; frequently operate hand controls on the left; occasionally grip, push, pull, and reach with the right upper extremity but less than occasionally reach overhead with the right upper extremity; avoid extremes of heat/cold; avoid concentrated exposure to smoke, dust, and fumes; and avoid excessive vibration (Tr. 46-47)

### *3. Other Evidence*

At the hearing, the ALJ employed a vocational expert ("VE"), who testified that a person of the same age, education, and employment history as Claimant could perform her past relevant work or other work. (Tr. 37-57.) The VE testified that she could perform her past work. *See id.*

Claimant also offered testimony at the hearing. She testified that her neck is sore all of the time, with radiating pain into her right shoulder and arm (Tr. 48). She stated that her hand goes numb, and she has difficulty with gripping and lifting anything heavy

(Tr. 48). She is able to write but not for a long period of time (Tr. 48-49). She testified she has difficulty looking down and up and that she has difficulty handling small objects (Tr. 49). She takes Ibuprofen and receives injections for her pain (Tr. 50). She also indicated she has difficulty lifting her arms and trouble standing and walking too much (Tr. 50-51). She testified that she had surgery on her left knee, which stays swollen, and she has a knee brace that she wears when standing for long periods of time (Tr. 51-52).

### C. Sequential Evaluation Process

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her

work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in his July 22, 2022 written decision, the Administrative Law Judge (ALJ) M. Drew Crislip concluded at step one that Claimant had not engaged in substantial gainful activity since the alleged onset of her disability on March 1, 2020. (Tr. 17). He found that Claimant's degenerative disc disease of the cervical spine and major joint dysfunction with osteoarthritis of the shoulders and knees constituted "severe" impairments. *Id.* However, he found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19.)

Upon assessing Claimant's RFC, the ALJ determined that Claimant has the residual functional capacity (RFC) to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, sit six hours, and stand and/or walk six hours in an eight-hour

workday. (Tr. 21.) She must alternate from sitting to standing or walking for 2-3 minutes every 2 hours and from standing or walking to sitting for 2-3 minutes each hour, always with capacity to remain on task during position changes, some of which would be covered such as absences from work, time off-task and the need to periodically change positions. *Id.* The claimant can occasionally operate foot controls and hand controls, and reach overhead bilaterally. *Id.* She can frequently reach in all other directions, handle, finger, and feel bilaterally. *Id.* The claimant can never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl but can occasionally climb ramps and stairs, balance (navigate uneven or slippery terrain), and stoop. *Id.* She can never work at unprotected heights, in proximity to moving mechanical parts of dangerous machinery, or in atmospheres of extreme heat or cold, or vibration. *Id.* The claimant can occasionally operate a motorized vehicle, or endure weather, humidity/wetness, or pulmonary irritants. In addition to normal breaks, she would be off task 5 percent of time in an eight-hour workday. *Id.*

The ALJ concluded that given the limitations imposed by the Claimant's RFC, she was able to perform her past relevant work because it did not "require the performance of work-related activities precluded by the claimant's RFC. (Tr. 27.) Relying upon the testimony of the Vocational Expert (VE), the ALJ found that there are other jobs in the national economy that the claimant also can perform, including the representative examples of router, inspector, and office helper. (Tr. 28-29.) As a result, the ALJ concluded that Claimant was not under a disability during the relevant time period. (Tr. 29.)

## II.    *LEGAL STANDARD*

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by

substantial evidence and were reached through application of the correct legal standard."
*Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434
F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant
evidence as a reasonable mind might accept as adequate to support a conclusion," and it
must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In
other words, this Court "looks to [the] administrative record and asks whether it contains
'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration
omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing
for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting
evidence, make credibility determinations, or substitute [its] judgment for that of the
[ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.
1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this
Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting
*Craig*, 76 F.3d at 589).

### III.    ANALYSIS

As noted *supra*, the Claimant alleges the ALJ incorrectly assessed a light RFC by failing
to consider the limiting effects from her physical impairments. The Claimant appears to
challenge the ALJ's evaluation of the opinion evidence to the extent that his rejection of the
manipulative limitations was a product of his "lay analysis" and does not provide the necessary
substantial evidence to support the unfavorable decision. (See ECF No. 12 at 15-16) Before
discussing the medical opinions of record, it is worth noting that the RFC determination is the
most a claimant can do despite her restrictions or limitations, and is *solely* an administrative
assessment made by the adjudicator based on all the relevant evidence in the record – no
medical opinion is required to fashion an RFC determination, but is considered with the

overall evidence. See Social Security Ruling (SSR) 96-8p, 1996 WL 3744184, at *1; 20 C.F.R. §§ 404.1545(a) and 404.1527(d); *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-231 (4th Cir. 2011). SSR 96-8p also provides that "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, at *7.

As noted above, the Claimant asserts that the medical opinion evidence establishing manipulative limitations establish a finding that she is disabled (See ECF No. 12 at 8-9). However, there are no medical opinions of record that determine she is disabled – significantly, Dr. Owens opined that she remained capable of light work, a determination that the ALJ found "generally persuasive" (Tr. at 25). Notably, even Dr. Olsen, who had the opportunity to examine the Claimant during a consultative examination, as well as review the longitudinal record, determined the Claimant has the capacity for light exertion, which the ALJ also found persuasive. (Tr. at 23, 68-83,  89-107) Regarding the State agency medical consultants' opinions[2], the ALJ noted that his RFC determination "is similar in some regards to that posited by Dr. Amigo", although the ALJ could not afford it "persuasive status":

> For example, he did not review the listings corresponding to the medically-determinable impairments he identified, or any listings for that matter, and this oversight alone renders his entire opinion incomplete, unreliable and fatally flawed. Further, in narrative, he cited as significant to his analysis medical conditions not listed by him as medically determinable impairment (compare 3A/10, 3A/14-15; 6A/10, 6A/14 & 16), including asthma and bilateral shoulder issues. In order for me to be able meaningfully to review DDS opinions, the professionals must clearly identify all significant medically determinable impairments in the section of the Disability Determination Explanation form set aside for that purpose, and not depart therefrom in explaining their reasoning.

---

[2] The only really notable opinion evaluated by the ALJ was provided by Isidro Amigo, M.D., at the reconsideration level of review. Saima Noon, M.D., at the initial level of review, found there was insufficient evidence to make any decision regarding the Claimant's physical issues. (Tr. at 26) The ALJ acknowledged that "[a]lthough perhaps accurate at the time, [this] conclusion [is] unpersuasive inasmuch as a substantial amount of pertinent evidence has been added to the record since [that analysis]." *Id.*

(Tr. 499-505.) Although the Claimant contends that the ALJ substituted his own lay opinion for those provided by the medical sources, this argument appears to hinge mainly on the basis that the ALJ simply did not adopt the Claimant's self-described greater restrictions. As noted *supra*, the Fourth Circuit has long recognized that the RFC "is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." See *Felton-Miller*, 459 Fed. App'x. at 230-231; *see also, Thaxton v. Colvin*, No. 2:16-cv-00281, 2017 WL 359219, at *18 (S.D.W. Va. Jan. 3, 2017)(Eifert, M.J.), *report and recommendation adopted by*, 2017 WL 359201 (S.D.W. Va. Jan. 24, 2017); *Jackson v. Comm'r, Social Sec.*, 2014 WL 1669105, at 2 (D. Md. Apr. 24, 2014)("an ALJ need not parrot a single medical opinion, or even assign "great weight" to any opinions, in determining an RFC assessment."); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."); *Sullivan v. Comm'r of Soc. Sec.*, 2014 WL 6685075, at *4 (E.D. Cal. Nov. 25, 2014)("It is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source."); *Gilmore v. Kijakazi*, 2022 WL 2869047, at *8 (M.D.N.C. Jul. 21, 2022)("the ALJ labored under no requirement to fashion an RFC that exactly matched Claimant's *testimony* or the opinion evidence."), *report and recommendation adopted by*, 2022 WL 3446133 (M.D.N.C. Aug. 17, 2022)(*emphasis* added).

Instead, an ALJ must consider all relevant evidence in the record, including the medical opinions, and craft an RFC that is supported by substantial evidence. 20 C.F.R. § 404.1545(a)(1). In this case, the ALJ did not engage in "playing doctor" by interpreting imaging or other evidence when he rejected the Claimant's self-described limitations. The

ALJ relied primarily on the medical record from the relevant period and correctly observed that the Claimant's primary symptomology – pain – improved with conservative treatment, notwithstanding abnormal findings during the relevant period.

To the extent the Claimant asserts that the ALJ's only reference to Section 404.1545 and SSR 96-8p is in the "boilerplate introductory section on page 3 of his decision" warrants remand pursuant to *Dowling*, 986 F.3d at 387 (ECF No. 12 at 7), this assertion lacks merit, explained *infra*. In *Dowling*, the Fourth Circuit noted the ALJ did not cite to these regulatory frameworks *at all*, but instead relied upon the incorrect regulatory framework: SSRs 96-7p and 16-3p, which pertain to the evaluation of a claimant's subjective complaints. *Id.* And further, unlike in *Dowling*, the ALJ here considered the Claimant's subjective complaints under the two-step test for symptom evaluation, and then went beyond his findings relating to the Claimant's subjective complaints when assessing her RFC by considering her response to treatment and medication, while also considering the medical opinions of record. (Tr. at 21-27) Thus, the ALJ did not treat the RFC and symptom evaluation as "one and the same." In the case at bar, even though the ALJ cited to the proper framework early on in the written decision, he obviously carried his analysis through the subsequent steps in the sequential evaluation process.

The Claimant argues that the ALJ neglected to adequately discuss the "other evidence" (ECF No. 12 at 13), only acknowledging her purported activities from the psychological consultative examination. (Id., citing Tr. at 525) To the extent that the Claimant alleges the ALJ discounted the Claimant's allegations based on the objective examination findings, thus " 'improperly increased her burden of proof' " contrary to the holding in *Arakas* (Id. at 16), the Court notes the following: SSR 16-3p clarifies the evaluation of symptoms, including pain: 20 C.F.R. § 404.1529 requires a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as

consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

The Ruling further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. *See*, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or

psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:

(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

*Id.* § 404.1529(c)(3).

The Court further recognizes that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See *Manigo v. Colvin*, 2015 WL 74954, at *5 (D.S.C. Jan. 6, 2015) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." *Clark v. Comm'r of Soc. Sec.*, 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." *Id.*

As noted by the Claimant, the Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *See Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 98 (4th Cir. 2020) (internal citations

omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." *Id.* It is important to recognize that in *Arakas*, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. *Id.* Another significant, if not critical, aspect of the *Arakas* holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. Id. For purposes herein, this Court must determine if the subject ALJ's analysis relied primarily on the lack of objective medical evidence as the reason for discounting the Claimant's complaints.

In the written decision, the ALJ noted the following regarding the Claimant's physical impairments:

> The claimant testified she has constant neck pain which radiates into the right upper extremity. She states her hand goes numb, noting that she has difficulty with gripping and lifting anything heavy. She indicated she is able to write but not for a long period of time. The claimant testified she has difficulty looking down and up. She stated she has difficulty handling small objects. The claimant noted she takes Ibuprofen and receives injections for the pain. She indicated she has back pain and has difficulty lifting her arms. The claimant endorsed trouble with standing and walking. She advised that she had surgery on her left knee, that it stays swollen, and that she has braces which she has to wear when standing for long periods.

(Tr. at 22.) After properly performing the two-step process, the ALJ proceeded to review the evidence of record and reconciled it with the Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms, and found that they "are not

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

The ALJ then referred to the medical record, discussed *supra*, noting that "[t]he objective findings do not corroborate the allegations to the disabling extent as asserted by the claimant." (Tr. 22.) The ALJ then made several observations that explained his reasoning in weighing the evidence. The ALJ discussed the results of largely unremarkable medical imaging, Claimant's full range of motion and strength on examinations, and inconsistent complaints of pain. *Id.* For instance, the ALJ noted that Dr. Schmidt noted claimant had some right-sided foraminal narrowing which might be a catalyst for right arm pain. He said it was reasonable to consider surgery but that she would need to stop smoking for six weeks; she elected to proceed with conservative treatment. *Id.*

Similarly, the ALJ observed that during follow up with Dr. Rahim on May 21, 2021, the claimant voiced no complaints of neck or shoulder pain. On June 28, 2021, she expressed concern that her knee was giving out. Dr. Rahim found no evidence of edema but referred her for an MRI; however, the record is devoid of indication that such study actually was performed, and in August 2021, Ms. Calhoun reported that she was doing much better. During follow up with Dr. Rahim on November 30, 2021, she shared with Dr. Rahim that she fell down while dancing, with resultant knee pain. On this occasion, she was able to walk and weight-bear. Dr. Rahim referred Ms. Calhoun to Dr. Nelson (orthopedist Matthew Nelson, M.D.) and once again ordered an MRI (Exhibit 10F); once again, there is nothing in the record showing that this MRI was accomplished. From the "minimal treatment" records and the Claimant's performance during the examinations, the ALJ determined light exertional work with certain limitations was appropriate. (Tr.

at 17.)

The aforementioned demonstrates that the ALJ did not cherry-pick only the evidence from the record to support a finding of non-disability; moreover, the ALJ's analysis demonstrates that he did not improperly increase her burden of proof that has been long considered verboten under Fourth Circuit jurisprudence, *supra*. There is no dispute that the Claimant is entitled to rely upon on her subjective complaints exclusively to prove her symptoms prevent her from working, however, this does not mean that the ALJ must accept her statements to the exclusion of the objective or other evidence of record – especially when there are inconsistencies with the overall record of evidence. See 20 C.F.R. § 404.1529(4). The ALJ is obligated to consider the Claimant's alleged functional limitations that "can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id*. Accordingly, the undersigned **FINDS** that the RFC assessment is supported by substantial evidence.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 9), **GRANT** the Commissioner's request to affirm her decision (ECF No. 10), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this

Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Judge Volk.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER:    March 1, 2024

Dwane L. Tinsley
United States Magistrate Judge